UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**EUGENE FLORENDO and**
**EVITA O. FLORENDO,**                                          Chapter 7
    Debtors                                            Case No. 11-15435-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the Chapter 7 Trustee's Motion to Approve Compromise in the Chapter 7 case of Eugene and Evita Florendo (the "Debtors"). A creditor of the Debtors, Jean Watts ("Watts"), the holder of a judgment against the Debtors in the approximate amount of $83,000, objected to the Motion to Approve Compromise on grounds that the settlement amount was inadequate.[1] The Court conducted a hearing on July 23, 2013, at which time the Court directed the Trustee and the Debtors to give Watts and any of her agents access to the artwork and jewelry for the purpose of inspecting and appraising it and determining whether to make an offer to purchase it.

On August 20, 2013, the Court conducted a further hearing on the Motion to

---

[1] Watts filed a complaint against the Debtors under 11 U.S.C. §§ 523 and 727. Because the Debtors voluntarily agreed to waive their discharge, Watts may pursue collection of the debt in accordance with 11 U.S.C. § 362(c).

1

Approve Compromise and took the matter under advisement.

The material facts necessary to resolve the matter are not in dispute and neither the Trustee nor Watts requested an evidentiary hearing. The Court now finds and rules as follows.

## II. BACKGROUND

The Debtors filed a Chapter 7 petition on June 6, 2011. Prior to the commencement of their case, they had been engaged in the business of selling art and jewelry primarily created by artists from the Philippines. According to the Trustee, they purported to operate their jewelry and art business from their residence under the name of Ocampos Gemologists & Jewelers, Inc. ("Ocampos"). The Trustee, through his investigation of the Debtors' financial affairs, learned that the Debtors had been using the name Ocampos for their business dealings, although there had been no corporation with that name in existence since at least March 2004. He, therefore, determined that Ocampos was an alter ego of the Debtors, as there was a confused commingling and common ownership of assets and a complete non-observance of corporate formalities and records. Accordingly, the Trustee determined that the art and jewelry which the Debtors maintained were assets of Ocampos were, in actuality, assets belonging to the Debtors. According to an inventory of the art and jewelry prepared by the Debtors, the value of the art and jewelry exceeded $70,000.00 (the "Inventory").

The Trustee commenced an adversary proceeding (Adv. P. No. 11-01283) against the Debtors and Ocampos in which he asserted that Ocampos was the alter ego of the Debtors

and a sham corporation.  The Trustee sought a declaration that the Inventory owned by Ocampos was, in fact, property of the Debtors' bankruptcy estate.  The Debtors denied the allegations and asserted that their shares of Ocampos had been transferred for consideration to a company in the Philippines, by the same name, operated by the family of Evita Florendo.  In addition, the Debtors disputed the value the Trustee ascribed to the Inventor, adding that certain artwork was held on consignment and was not property of the estate.

During the course of the adversary proceeding, the Trustee made several attempts to obtain a valuation of the Inventory, which efforts included contacting various auction houses, contacting individuals with knowledge of Philippine art, soliciting leads from companies in the Philippines, and reaching out to the Debtors' creditors to see if interest could be garnered from them in purchasing the Inventory.  According to the Trustee, despite his due diligence and efforts, he was unable to obtain either an independent valuation of the Inventory or to locate a potential purchaser.  As a result, he entered into a settlement with the Debtors because of the likely expense of the removal and storage of the Inventory and the anticipated difficulties with respect to and likely outcome of litigation or the liquidation of the Inventory.  Pursuant to the parties' agreement, the Debtors have agreed to pay the Trustee, not later than October 1, 2013, the sum of $25,000 in settlement of the Trustee's claims in the adversary proceeding.  Providing receipt by the Trustee of the Settlement Payment in full by October 1, 2013, the Trustee agreed that the balance of the Inventory (or the proceeds therefrom) could by held by the Debtors free and

clear of the injunction against its sale which he had obtained on September 26, 2011 and further claims of the bankruptcy estate. In the event the Debtors failed to pay the settlement amount in full, the parties' agreement requires them to turn over to the Trustee all Inventory purported to be held on consignment, unless proof of assignment is produced.

At the hearing, Watts, who as noted above had been afforded an opportunity to inspect and appraise the Inventory, reported that her appraiser, Michael Coyle, "did not feel that the artwork was that valuable" and that she offered the Trustee $5,000 for the Inventory, which offer was rejected by the Trustee.

## III. DISCUSSION

The Court is satisfied that the Trustee has sustained his burden as to the reasonableness of the proposed compromise under applicable law in this circuit.

> The specific factors which a bankruptcy court considers when making this determination include: (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise.

Jeffrey v. Desmond, 70 F.3d , 183, 185 (1st Cir. 1995) (citing In re Anolik, 107 B.R. 426, 429 (D. Mass.1989)). "When considering the foregoing, deference should also be given to the Trustee's judgment regarding the settlement, provided that the trustee can demonstrate that the proposed compromise falls within a "range of reasonableness" In re Fibercore, Inc., 391 B.R. 647, 655 (Bankr. D. Mass. 2008)(citing Hill v. Burdick (In re Moorhead Corp.), 208

B.R. 87 (B.A.P. 1st Cir. 997); In re Whispering Pines Estates, Inc., 370 B.R. 452, 461 (B.A.P. 1st Cir. 2007); and In re 110 Beaver St. P'ship, 244 B.R. 185, 187 (Bankr. D. Mass.2000)).

The Court finds that the Trustee has satisfied each and every element of the test articulated by the First Circuit in Jeffrey v. Desmond. He has considered the probability of success and weighed the legal and evidentiary obstacles and risks associated with complex theories and a jury trial. In view of his experience, his judgment is entitled to deference.

The Court afforded Watts an opportunity to challenge the reasonableness of the settlement by engaging her own appraiser. She did so. She reported, however, that the Inventory did not appear to have value in excess of the settlement amount. Accordingly, her objection to the Trustee's settlement is unmeritorious and unsustainable.

## IV. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Trustee's Motion to Approve Compromise.

By the Court,

*/s/ Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: September 13, 2013